IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GREGORY JASON COLLEY, )
    Movant, )
  )
v. ) 1:15-cr-203 (LMB)
  ) 1:16-cv-1297 (LMB)
  )
UNITED STATES OF AMERICA )
  )

MEMORANDUM OPINION

Before the Court is Gregory Jason Colley's ("Colley" or "movant") pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") [Dkt. No. 43], in which he argues that he received constitutionally ineffective assistance from his Federal Public Defender, Elizabeth Mullin ("Mullin" or "Counsel"). The government has responded to the motion [Dkt. No. 49] and Colley filed a reply [Dkt. No. 53]. On February 24, 2017, after briefing on the § 2255 Motion was complete, Colley filed a Motion to Amend or Supplement § 2255 Under Rule 15(c) ("Motion to Amend") [Dkt. No. 54], to which the government responded [Dkt. No. 55].

Having reviewed the entire record, the Court finds that there is no need for an evidentiary hearing and concludes based on the submitted materials that the § 2255 Motion should be dismissed and the Motion to Amend denied.

I.    BACKGROUND

According to the Statement of Facts Colley signed when he pleaded guilty, on the evening of September 12, 2014, he met Jason Laytham ("the victim") and an individual identified as N.S. at a bar in Herndon, Virginia. [Dkt. No. 23] ¶¶ 2-3. The three individuals then

traveled to the Homewood Suites in Ashburn, Virginia. Id. ¶ 3. There, in Room 350, N.S. and the victim purchased a total of two grams of cocaine from Colley and snorted the cocaine in the room. Id. ¶ 4. N.S. and the victim then traveled to the Marriott Courtyard in Sterling, Virginia to reserve a room for N.S. Id. They subsequently returned the Homewood Suites where they "purchased an unknown amount of an unknown drug from an occupant of Room 350." Id. Immediately after ingesting the unknown drug, N.S. and the victim became unconscious. Id. ¶ 5. After the victim became unconscious, Colley moved the victim from Room 350 to a vending machine area in the hallway of the hotel and called 9-1-1 to alert paramedics. Id. ¶¶ 6-7. Colley admitted that he "moved [the victim], at least in part, because he feared the consequences of law enforcement officials finding [the victim's] body inside of [R]oom 350, which he rented in his own name." Id. ¶ 6. Police responded at 4:26 a.m. on September 13, 2014 and found the victim lying unresponsive in the hallway. Id. ¶ 8. He was pronounced dead at 4:45 a.m. Id. ¶ 9. Law enforcement identified Room 350 as the place from which the victim was likely dragged and discovered Colley and N.S. within the suite. Id. ¶¶ 9-10. N.S. appeared to be suffering from a drug overdose; he was transported to the hospital and survived. Id. ¶ 10. Officers secured a search warrant for Room 350 and recovered a baggie containing a substance that lab tests confirmed was cocaine. Id. ¶ 11. Colley affirmed that his actions as described in the Statement of Facts "were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason." Id. ¶ 14.

On April 12, 2015, the United States filed a two-count Criminal Complaint against Colley, alleging Drug Distribution, in violation of 21 U.S.C. § 841(a)(1), and Tampering with Evidence, in violation of 18 U.S.C. § 1512(c). [Dkt. No. 1]. In light of Colley's criminal history and status as a career offender under the United States Sentencing Guidelines, Colley faced a

guideline range of 262-327 months on the drug distribution charge. [Dkt. No. 49] at 6.[1] The tampering with evidence charge carried a sentencing range of 130-162 months. [Dkt. No. 34] at 27.[2] On July 22, 2015, Colley waived indictment, [Dkt. No. 18], and pleaded guilty to the tampering charge, [Dkt. No. 19]. After a full Rule 11 colloquy, including a review of the Statement of Facts, the Court accepted Colley's guilty plea. Plea Trans. [Dkt. No. 41] at 36:3-9. At the time of the plea hearing, Colley represented that he was thirty-six years old, had a high school education, and had no problem reading, writing, speaking, or understanding English. Plea Trans. at 4:4-10. During the colloquy, Colley, who had affirmed to answer truthfully, stated that he was satisfied with his attorney's representation, id. at 26:16-18, accepted the Statement of Facts as true, id. at 32:9-23, and affirmed that he was pleading guilty absent any coercion or threats, id. at 31:14-16. He also confirmed that he understood that separate charges could be brought in Loudoun County.

> The Court: All right. Now, what about Loudoun County? Is your client still exposed as a result of this case to new charges in Loudoun County?
>
> Ms. Mullin: He's exposed to probation violation in Loudoun County. This case was initially brought in state court and dismissed there. So potentially, yes, but my understanding is that Loudoun County might seek to violate him on his probation but won't necessarily bring the charges there, as they've been brought in federal court.
>
> . . .
>
> The Court: Well, this is a tampering with witness case . . . but, for example, there's also, as I understand the facts, a distribution of drugs.
>
> Mr. Ben'Ary: That's correct.

---

[1] This calculation assumes that Colley was convicted only of the drug distribution charge, did not receive a three-level reduction for acceptance of responsibility, that the base-level offense was thirty-four, and that the criminal history category was VI. Id.
[2] This assumes a three-level reduction for acceptance of responsibility. Id.

3

The Court: That would be a different charge.

Mr. Ben'Ary: Again, technically correct, it wouldn't be barred by double jeopardy, but I think likely that Virginia statute would prevent it. We are working with the Loudoun County Sherriff's Department. There isn't any written, formal agreement that covers it, but I think that it's fair to say that no one is expecting additional state charges other than a probation violation based on the conduct that's covered by the statement of facts.

The Court: All right. But the government hasn't guaranteed or promised in any respect that there would be a pass on the Loudoun County charges?

Mr. Ben'Ary: No.

. . .

The Court: All right. Well, Mr. Colley, I want to make sure you understand that you're still potentially exposed to other charges in Loudoun County. Do you understand that?

The Defendant: I do.

The Court: All right. Does that in any respect change your decision to plead guilty?

The Defendant: No.

The Court: All right. But do you understand that as part of this agreement with the federal government, the federal government has not guaranteed or promised you that you wouldn't be prosecuted in state court?

The Defendant: That's correct.

Plea Trans. at 13:24-15:25.

Following Colley's plea, on September 29, 2015, Loudoun County filed its own criminal complaint in General District Court, alleging that on September 13, 2014, Colley distributed narcotics to the victim which contributed to the victim's death. § 2255 Mot. at 14-15.

On October 16, 2015, Colley was sentenced in this court. His guidelines range was 130-162 months. [Dkt. No. 34] at 27. His criminal history was a category VI based on a total criminal

history score of 17 which included multiple felony-level convictions for drug offenses involving methamphetamine (1998, this district), cocaine (2006, Montgomery County, Maryland), cocaine and phencyclidine (2007 and 2008, Loudoun County, Virginia) and marijuana (2009, Culpeper County, Virginia). Id. at 10-20. He received multiple additional periods of incarceration for violating periods of probation. Id. A number of these convictions had suspended sentences and the movant urged the Court to consider that he would receive over a four-year sentence for probation violations arising from the incident. [Dkt. No. 31] at 1, 15. The Court sentenced Colley to a variant sentence of ninety-six months of incarceration, followed by three years supervised release, and ordered him to pay a $100.00 special assessment. [Dkt No. 37]. Colley was also ordered to pay $17,175.70 in restitution to the victim's family after he agreed to pay that restitution. Id.; see also Sent. Trans. [Dkt. No. 42] at 22:3-24:11. The sentence was not ordered concurrent to any state court sentence. See generally Sent. Trans.

On June 1, 2016, Colley pleaded guilty to the drug distribution charge in Loudoun County. [Dkt. No. 55] at 2; [Dkt. No. 55] at 1. While awaiting sentencing, he filed his § 2255 Motion in this court. [Dkt. No. 43]. On November 16, 2016, Loudoun County sentenced him to fifteen years with all but five years suspended for the distribution charge. [Dkt. No. 55] at 1. In addition, the suspended sentences for four prior convictions were revoked and the state court ordered Colley to serve a total of four years and four months for these earlier convictions, time that was to run consecutive to his new state sentence. Id. The state sentencing order says nothing about whether the state sentence is to run concurrent or consecutive to the movant's federal sentence. Id.

5

## II. DISCUSSION

### A. Standard of Review

A motion to vacate under 28 U.S.C. § 2255 provides for a collateral attack on a conviction or sentence when the conviction or sentence was imposed in violation of the United States Constitution or laws, when the court lacked jurisdiction to impose the sentence, when the sentence was in excess of the maximum authorized by law, or when the conviction or sentence is otherwise subject to a collateral attack. See 28 U.S.C. § 2255(a). Relief under § 2255 is reserved for situations in which failing to grant relief would be "inconsistent with the rudimentary demands of fair procedure or constitute[] a complete miscarriage of justice." United States v. Vonn, 535 U.S. 55, 64 (2002) (quoting United States v. Timmreck, 441 U.S. 780, 783 (1979)). To prevail on a § 2255 motion, the movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. See Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

A § 2255 motion "may not do service for an appeal," and claims that have been waived are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982). Although procedural default generally bars claims not previously raised, a freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. See United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

Under § 2255(b), a movant is to be granted an evidentiary hearing on his motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Summary dismissal of § 2255 allegations is "warranted only if a [movant's] allegations when viewed against the record of the plea hearing are palpably incredible or patently

6

frivolous or false." United States v. White, 366 F.3d 291, 297 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 76 (1977)).

### B. § 2255 Motion

Colley raises four ineffective assistance of counsel claims in his § 2255 Motion, none of which has merit. To establish ineffective assistance of counsel, Colley must show both that (1) "counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance occurs when "counsel's representation fell below an objective standard of reasonableness" as established by "prevailing professional norms." Id. at 687-88. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence" and because a wide range of legitimate defense strategies are possible in a given case, there is a "strong presumption" that counsel's conduct was within the wide range of reasonable professional assistance and "scrutiny of counsel's performance must be highly deferential." Id. at 689-90. In keeping with this standard, a court is to assess counsel's conduct not with the benefit of hindsight, but from the perspective of counsel at the time of the relevant action or decision. Strickland, 466 U.S. at 689. As to the second prong, a movant can show prejudice when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A showing that "the errors had some conceivable effect on the outcome of the proceeding" is not enough; a reasonable probability requires that the errors are "sufficient to undermine confidence in the outcome," id. at 693, 694, or that the results of the proceeding were fundamentally unfair, Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Assessing prejudice "requires the court deciding the ineffectiveness claim to 'consider the totality of evidence before the judge or jury.'" Elmore v. Ozmint, 661 F.3d 783,

7

858 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 695). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700.

Colley's first argument is that Mullin provided ineffective assistance of counsel when she advised him to admit to the drug distribution in the Statement of Facts—even though he now contends he did not do it—in exchange for a plea deal to the charge of tampering with evidence. § 2255 Mot. at 4. Colley claims that he is innocent of drug distribution, a claim that is directly contradicted by his sworn Statement of Facts, in which he admitted selling two grams of cocaine to N.S. and the victim, as well as by the guilty plea he entered to the drug distribution charge in Loudoun County. [Dkt. No. 23] ¶ 3; [Dkt. No. 55] at 2. A movant's "declarations in open court carry a strong presumption of verity," Blackledge, 431 U.S. at 74, and a prisoner found guilty based on a guilty plea is "bound by the representations he makes under oath during a plea colloquy" unless he provides "clear and convincing evidence to the contrary," Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1299 (4th Cir. 1992). Because Colley has not presented "clear and convincing evidence" to contradict his sworn admission to distributing cocaine, his "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge, 431 U.S. at 74.

Moreover, even if the Court were to accept Colley's profession of innocence as true, he cannot establish that his counsel's performance was defective. On the drug distribution charge, Colley's prior felony drug conviction made him eligible for a sentence of up to thirty years. See 21 U.S.C. § 841(b)(1)(C). And, his extensive criminal history would have made him subject to the career offender enhancement under the sentencing guidelines, resulting in a guideline range of 262-327 months. [Dkt. No. 49] at 6. By contrast, the tampering with evidence charge carried a

maximum sentence of twenty years, and with a three-level reduction for acceptance of responsibility, petitioner's guideline range was 130-162 months. [Dkt. No. 34] at 27. In other words, his plea agreement reduced his guidelines range by 132-165 months, or over ten years. Although Colley might have preferred even more favorable terms, it was not unreasonable for counsel to advise him to admit the drug distribution in the Statement of Facts in exchange for being insulated from criminal prosecution for that conduct in the Eastern District of Virginia and to lower his sentencing exposure to no more than 20 years incarceration. [Dkt. No. 22] ¶ 9. In other words, Colley "was lucky to receive the deal that he did. Pleading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's remorse on the part of one who has reaped advantage from the purchase." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

Colley also fails to satisfy the prejudice prong because the Court did not base his sentence on the drug distribution, thus the inclusion of his admission did not affect the judgment in this jurisdiction. See generally Sent. Trans. Whatever effect Colley's admission may have had in state court proceedings is beyond the scope of his motion to vacate, set aside, or correct his federal sentence. [Dkt. No. 43].

Colley's second argument is that he received ineffective assistance of counsel when Mullin advised him to cooperate with the government in exchange for a plea and advised him that any statement made in a debrief interview could not be used against him in "any court." § 2255 Mot. at 5. Colley contends that the state detectives who attended his debrief "used [his] statements from that interview to charge and convict [him] of drug charges in [Virginia] state court." Id. Again, Colley provides no factual basis for this claim. As the government points out, the Loudoun County officials did not need to rely on the debrief because movant's sworn

9

admissions in both the Statement of Facts and on the record during his plea hearing established that he had engaged in drug distribution. [Dkt. No. 23] ¶ 4; Plea Trans. at 32:9-23, 34:15-17. Unable to prove that his statements during the debrief were used against him in Loudoun County, Colley cannot demonstrate that he suffered any prejudice. And, even if Colley could demonstrate prejudice in Loudoun County, this would not establish prejudice with respect to the conviction at issue in this § 2255 Motion. Under Strickland, a movant is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In the context of ineffective assistance of district court counsel, the "proceeding" at issue is the forum in which the movant was convicted, which in this case was the Eastern District of Virginia, not Loudoun County. Cf. Richardson v. Branker, 668 F.3d 128, 139–40 (4th Cir. 2012) ("In the context of a claim of ineffective assistance of appellate counsel, the 'proceeding' at issue is the forum in which the [movant's] appeal was heard.").

In his third ineffective assistance of counsel argument movant appears to be arguing actual innocence by alleging that his counsel advised him to plead guilty to the tampering charge even though his conduct did not satisfy all the elements of the offense.[3] He contends that "there was no malice" because he moved the victim to the vending area so he "could place ice on him in order to revive him" and he called 9-1-1 once he "realized that wasn't going to work." § 2255

---

[3] To establish actual innocence of a crime to which he pleaded guilty, a movant "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998). Moreover, "where the Government has forgone more serious charges in the course of plea bargaining, [movant's] showing of actual innocence must also extend to those charges." Id. at 624. Beyond his bald representations, movant has submitted no evidence of actual innocence on either the drug distribution or tampering with evidence charges, nor has he explained why no reasonable juror would have convicted him. Thus, any claim of actual innocence is without merit.

Mot. at 7. Under the relevant statute, it is a crime for someone to "corruptly—(1) alter[], . . . or conceal[] a record, document, or other object, or attempt[] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." 18 U.S.C. § 1512. In his reply, Colley argues that the government must prove that there is a nexus between a defendant's actions and an official proceeding, meaning that an official proceeding "must be at least foreseeable to the defendant." Reply at 6 (citing Arthur Andersen LLP v. United States, 544 U.S. 696 (2005)).

The statute plainly does not contain a malice element; however, construing movant's pleadings liberally, the Court interprets his argument as a challenge to the mens rea element of "intent." As an initial matter, Colley's assertion that "the only reason" he moved the victim was to "try to help him," § 2255 Mot. at 7, will not be credited, as it is contradicted by the Statement of Facts, in which Colley acknowledged that he moved the victim "at least in part, because he feared the consequences of law enforcement officials finding [the victim's] body inside of [R]oom 350, which he rented in his own name." [Dkt. No. 23] ¶ 6. Consistent with this admission, during the plea hearing, Colley denied moving the body to "hide" it from law enforcement but admitted that he moved it to avoid being implicated in a drug offense:

> The Court: Were you concerned that law enforcement might find him in the room?
>
> The Defendant: Yes
>
> The Court: And that might implicate you in a drug transaction?
>
> The Defendant: It certainly could implicate me in something, yes. That's what [sic] I was concerned.
>
> The Court: All right. And again, everything in these 15 numbered paragraphs [in the Statement of Facts] you agree with?
>
> The Defendant: Yes.

Plea Trans. at 34:8-17. In addition, during Colley's plea colloquy he affirmed that the government could have proven each of the facts set forth in the Statement of Facts beyond a reasonable doubt. Id. at 32:17-23. And, when interviewed by the Probation Office during its preparation of the Presentence Investigation Report ("PSR"), Colley reiterated this motivation and as a result incurred the benefit of a three-level reduction to his offense level for acceptance of responsibility. [Dkt. No. 34] ¶ 35.[4]

Based on the representations made in the Statement of Facts and plea colloquy it was not unreasonable for Mullin to advise Colley to plead guilty to tampering with evidence. His statements indicated that he deliberately moved the body so that he would not be implicated in a drug transaction and he anticipated that law enforcement would become involved, therefore he clearly foresaw an official proceeding. Although Colley appears to deny that moving the body affected its integrity or availability, Reply at 7, this is unpersuasive. The location of evidence is highly relevant to the meaning of that evidence, as demonstrated by Colley's impulse to move the body so as to avoid being implicated in a crime. Plea Trans. at 34:8-17.

Even if Colley were able to establish that his counsel failed the performance prong, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Although Colley's brief contains statements to that effect, Reply at 8, Colley "cannot make that showing merely by telling the court now that he would have gone to trial then if he had gotten different advice." Christian v. Ballard, 792 F.3d 427, 452 (4th Cir. 2015) (internal quotation marks omitted). Rather, Colley "must convince the court that a decision to reject the

---

[4] Colley's statement included the following admission: "I moved [the victim], in part, because I was panicking and did not want law enforcement to discover that drugs had been used and distributed in the hotel room." [Dkt. No. 34] ¶ 35.

plea bargain would have been rational under the circumstances." Id. (internal quotation marks omitted). This he cannot do. As explained above, the drug distribution charge carried a maximum sentence of 30 years, while tampering with the evidence carried a 20-year maximum. See supra at 8-9. Moreover, the guideline range for tampering with evidence, with the three-level deduction for acceptance of responsibility, was 130-162 months, less than half that of the drug distribution charge. Id. Further, according to the evidence set forth in the affidavit in support of the Criminal Complaint and Colley's own Statement of Facts, had the case gone to trial the government had N.S.'s testimony that Colley sold him cocaine, the toxicology report showing that the victim had cocaine in his system, and the powder found in Room 350, which lab tests confirmed was cocaine. [Dkt. No. 2] ¶¶ 8, 10-11; [Dkt. No. 23] ¶¶ 4, 11-12. Based on the sentencing guidelines and the evidence, the Court is not persuaded that it would have been rational for Colley to reject the plea offer and finds that he has failed to establish that he was prejudiced by his counsel's advice to plead guilty.

Colley's fourth argument is that his counsel was ineffective when she explained that "restitution would not apply in this case" but advised him to agree to restitution to "look good in front of the judge." § 2255 Mot. at 8. Colley now claims that he was "in no way responsible for [the victim's] death" and "tampering with evidence does not justify restitution of $17,000.00." § 2255 Mot. at 8. The plea agreement, as well as statements during the plea hearing and sentencing hearing refute Colley's assertion of ineffective assistance.

As part of the plea agreement, Colley agreed that restitution was "mandatory pursuant to 18 U.S.C. § 3663A" and agreed to pay restitution for "the full amount of the victim's losses." [Dkt. No. 22] ¶ 8. At his plea hearing, Colley stated that he understood that the plea agreement required him to pay restitution for the victim's funeral expenses. Plea Trans. at 23:2-14. The

13

amount was unspecified at the time of the plea; however, at sentencing, the funeral expenses had been calculated as $17,175.70 based on supporting documentation provided by the victim's family. [Dkt. No. 32] at 6, 32. In movant's sentencing memorandum, Colley objected to paying the restitution for the victim's funeral expenses, arguing that § 3663 only requires a defendant to pay restitution "in the case of an offense resulting in bodily injury that results in the death of the victim," and emphasizing that Colley was convicted of tampering with evidence and there was no evidence that he was "convicted, let alone charged with, causing [the victim's] death." [Dkt. No. 31] at 9-10. Mullin orally raised this same argument during the sentencing hearing. Sent. Trans. at 11:24-12:12.

The government responded that the parties agreed that it was possible under § 3663 for a defendant to take responsibility for restitution for conduct that was outside of the offense of conviction, and argued that the plea agreement established a voluntary restitution agreement. Id. 21:14-21. The Court asked whether the defendant would volunteer to make restitution. Id. at 21:24-22:6. After conferring with Colley, Mullin stated that, "as a sign of good faith and expressing his condolence to the family, he would offer to pay that restitution, though the reality is he can't pay it and won't be able to pay if for a long time." Id. at 22:12-17. To ensure that Colley was agreeing to pay the restitution, the Court called him up to the lectern and explained that he was not required to sign the restitution order but that if he signed it, "that's going to be the law of the case." Id. at 23:19-23. Colley then stated that he wanted to make restitution and agreed that he had not been pressured to agree. Id. at 24:3-11.[5]

---

[5] The full exchange was as follows:

> The Court: All right. Now, I want to make sure you understand—the restitution order must be someplace over there. You need to sign it, but I want to make sure

14

Given these facts, Colley has failed to establish defective performance by his counsel, who argued that Colley was not legally obligated to pay the full amount of restitution under § 3663 and thus cannot be faulted for mischaracterizing the law. To the extent that she encouraged Colley to offer to pay restitution as a show of good faith, Colley has not established that this recommendation was objectively unreasonable and therefore his counsel's performance was not ineffective under Strickland. Moreover, he had the chance to refuse to pay restitution but told the Court he was willing to sign the restitution order.

### C. Motion to Amend

On February 24, 2017, Colley moved to amend his § 2255 Motion based on "newly discovered facts," arguing that the government knew when he was sentenced, and perhaps earlier, that Loudoun County authorities had issued an arrest warrant for movant charging him with the distribution of drugs under Virginia law and failed to bring that fact to the attention of the Court at the sentencing hearing. Mot. to Amend at 1-2. He argues that he was prejudiced by

---

> you understand that the Court's not forcing you to sign it, so if you sign it, that's going to be the law of the case. Do you feel you've had enough time to discuss the restitution order with Ms. Mullin?
>
> The Defendant: Honestly, no, but that's okay. I mean, I'll take it.
>
> The Court: No, I don't want you to feel like you've been forced or pressured into it. I mean, the point is do you genuinely want to make some kind of restitution to [the victim's] family?
>
> The Defendant: I would certainly like to make some kind of restitution, yes.
>
> The Court: All right. Do you feel you've been forced or pressured into agreeing to restitution?
>
> The Defendant: No.

Sent. Trans. at 23:19-24:11.

15

this omission because it prevented him from arguing that "his federal sentence should have run concurrent to the yet to be imposed Virginia state sentence, particularly considering that the conduct comprising the state offense, derived from facts gathered from his federal prosecution." Id. at 2. This motion will be denied as time-barred.

A person convicted of a federal offense has one year to file a § 2255 motion, starting from the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4). If a defendant does not appeal, his conviction becomes final when his opportunity to appeal expires. See Clay v. United States, 537 U.S. 522, 524–25, 532 (2003). A § 2255 claim presented in a motion to amend that is filed more than one year after the conviction becomes final is untimely unless the claim relates back to a timely-filed claim, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure. See Mayle v. Felix, 545 U.S. 644, 662–64 (2005).

The Court entered judgment in this case on October 16, 2015. Colley did not appeal his case to the Fourth Circuit, therefore his conviction became final on October 30, 2015. The Motion to Amend was filed on February 24, 2017, over one year and three months after the judgment became final. Colley attempts to invoke the newly discovered evidence standard, arguing that his Motion to Amend was filed "within one year of the time it came to [his] knowledge that he would be prosecuted and actually sentenced for the state offense." Mot. to

16

Amend at 3. This claim is belied by the fact that the evidence on which he relies, the Loudoun County arrest warrant, states that it was executed on January 13, 2016. Mot. to Amend at 6. Colley would have become aware of the state charge at the time the warrant was executed, thus his one-year period to file a § 2255 motion based on this evidence elapsed on January 13, 2017. He did not file his Motion to Amend until over a month later.[6] Consequently, movant's Motion to Amend will be dismissed as time-barred.[7]

Furthermore, even if the Court were to consider the claim set forth in the Motion to Amend, Colley cites no authority for the proposition that the government was under an obligation to disclose pending criminal charges and he adduces no evidence to support his conclusory allegation that the government knew of the Loudoun County arrest warrant at the time of sentencing. As explained above, the movant bears the burden of proving his grounds for collateral relief and he must do so by a preponderance of the evidence. See Jacobs, 350 F.2d at 574. When the PSR was prepared, the arrest warrant had not yet issued,[8] and there is no evidence

---

[6] The dates on which the criminal complaint and the arrest warrant were filed in Loudoun County are obscured with marker in the versions attached to the Motion to Amend. See Mot. to Amend at 6-7. To the extent that this suggests that Colley did not initially know when the documents were filed and could not form any conclusions about when the government might have known, the Court is unpersuaded. The September 29, 2015 dates are still legible through the marker and both documents were attached to the § 2255 Motion, at which point neither date was covered by marker. This suggests that nothing prevented movant from raising this argument when he filed his original § 2255 Motion.

[7] Although this was not raised by movant, the Court also concludes that the claim raised in the Motion to Amend does not relate back to claims set forth in the § 2255 Motion, as each of the original claims pertained to ineffective assistance of counsel and movant's new argument is a claim against the government. See Mayle, 545 U.S. at 662–64.

[8] The PSR was prepared on September 8, 2015, three weeks before the Loudoun County arrest warrant was issued. [Dkt. No. 58] at 1. It stated that there were no other charges pending against Colley. Id. ¶ 61. The report was recirculated on October 7, 2015, at which point it included a description of the parties' objections and a letter from the victim's mother, which was attached as an addendum. [Dkt. No. 30]. It was recirculated again on October 13, 2015, this time with

17

in the record as to whether the arrest warrant had been made public by the time Colley was sentenced in this Court or whether a detainer had been issued to federal authorities.

Notwithstanding the absence of evidence that the government knew about the Loudoun County arrest warrant, as the government correctly observes, when "charges against a defendant are public, there is no reason to impose . . . a duty of discovery and disclosure on the government. And where the charges are not public, requiring disclosure could undermine the state's prosecution." [Dkt. No. 55] at 1.

Lastly, although Colley relies on Setser v. United States, 566 U.S. 231, 236 (2012) for its holding that a district court has the authority to order that its sentence run concurrently with a sentence anticipated in state proceedings, [Dkt. No 54] at 1-2, he has not established that his sentence would have been different had the Court been made aware of the pending Loudoun County charge. To the contrary, ordering a sentence to run concurrently is within the discretion of the court and it includes the discretion to order that a sentence be served consecutively, Setser, 566 U.S. at 236, and Colley has not supplied any evidence or made any argument as to why the Court would have exercised its discretion in this case, much less chosen to order a concurrent sentence. Moreover, the Court was aware of the significant backup time Colley faced in Loudoun County on the four state court convictions which had suspended sentences. The Court did not run the final sentence concurrent with any backup time. Given Colley's extensive criminal history and the Court's decision to impose a variant sentence it is highly unlikely any portion of the federal sentence would have been run concurrent with the state sentence. In sum, movant has failed to establish that his sentence was imposed in violation of the United States Constitution or

---

additional victim impact statements; however the body of the report still stated that it was prepared September 8, 2015. [Dkt. No. 34] at 1.

laws, see 18 U.S.C. § 2255, or that his sentence was ""inconsistent with the rudimentary demands of fair procedure or constitute[] a complete miscarriage of justice." Vonn, 535 U.S. at 64 (quoting Timmreck, 441 U.S. at 783).

### III. CONCLUSION

For the reasons stated above, the § 2255 Motion will be dismissed and the Motion to Amend will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 24 day of March, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge